UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 05-409-C

BONNIE MASDEN,                                                                                   PLAINTIFF,

V.                       MEMORANDUM OPINION AND ORDER

UNIVERSITY MEDICAL CENTER, INC., ET AL.,                              DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This is an ERISA-governed case in which the parties seek judicial review of a decision to deny the plaintiff's application for long term disability benefits. The court, having reviewed the record and being advised, will uphold the decision of the claims administrator.

**Facts:**

The plaintiff, Bonnie Masden, was employed by University Medical Center as a clinical assistant in the nursing department. Through her employer, she participated in a Group Disability Plan (the "Plan") that Liberty Life Assurance Company of Boston ("Liberty") funded and administered. This Plan provides disability benefits to eligible participants. Under the terms of the Plan,

> a. If the Covered Person is eligible for the 36 Month Own Occupation benefit, "Disability " or "Disabled" means that during the Elimination Period and the next 36 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and
>
> b. Thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

The Elimination Period is "a period of consecutive days of Disability or Partial Disability for which no benefit is payable." The Elimination Period begins on the first day of Disability and lasts 150 days.

Ms. Masden applied for long-term disability benefits on October 4, 2004. Her last day of work was June 8, 2004, and she alleged that her illness began on June 10, 2004. Therefore, her Elimination Period was from June 9, 2004, until November 4, 2004. Ms. Masden listed physical ailments including chronic arthritic hips and knees, pancreatitis, elevated liver enzymes, vomiting, nausea, chronic diarrhea, and seizure disorder, and stated that she suffered from bipolar disorder with mania/depression PTSD. To support these claims she provided an Attending Physician's Statement from her treating physician, Dr. David Berry, accompanied by various treatment notes. Ms. Masden also provided treatment notes from her therapist, Carol Walton, and from a second physician, Dr. Kathryn Hutchens.[1]

Liberty referred Ms. Masden's file to a Managed Care Nurse, Katherine Argue. Ms. Argue found that there was insufficient medical evidence to show that Ms. Masden was disabled under the terms of the Plan. Specifically, Nurse Argue noted the absence of diagnostic tests confirming diagnoses of diarrhea, seizure disorder, or pancreatitis during the Elimination Period. Nor did she find evidence that Ms. Masden was experiencing an exacerbation of bipolar symptoms. Liberty

---

[1] Dr. Berry referred Ms. Masden to Dr. Hutchens for her abdominal pain. However, Dr. Hutchens saw Ms. Masden only once.

also sent Ms. Masden's file to a consulting physician, Dr. Peter Mirkin, to review her allegations of disability caused by bipolar disorder. After reviewing the record, Dr. Mirkin opined that Ms. Masden did not suffer from disabling mental conditions. Therefore, Liberty denied Ms. Masden's claim for benefits.

Ms. Masden sought an administrative appeal of Liberty's denial arguing, among other things, that Liberty's denial letter failed to address her physical symptoms. Along with her letter requesting appeal, Ms. Masden sent additional medical records[2] to Liberty to support her allegations of disability. Nurse Argue reviewed the relevant evidence, but found no indication that Ms. Masden suffered from disabling physical or mental conditions. Liberty also requested a peer review from Drs. Ian Lipsitch and Arnold Flick, both of whom opined that Ms. Masden did not suffer from physical or mental disability. Therefore, Liberty denied her appeal.

## II.   Standard of Review

The parties agree that the court should apply the arbitrary and capricious standard of review to the administrative decision. "[T]he arbitrary and capricious standard is the least demanding form of judicial review of administrative action. When applying the arbitrary and capricious standard, the Court must decide whether the Plan administrator's decision was rational in light of the Plan's provisions. Stated differently, when it is possible to offer a reasoned explanation,

---

[2] The additional records included notes from Dr. Berry and Carol Walton, and treatment records from the University of Louisville Healthcare, University Hospital and Floyd Memorial Hospital. However, according to Liberty, many of these records were irrelevant to Ms. Masden's ability to work during the Elimination Period.

3

based on the evidence, for a particular outcome, that outcome is not arbitrary and capricious." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000) (internal citations and quotations omitted). Review under the arbitrary and capricious standard is highly deferential, but does not automatically mandate adherence to the administrative decision. *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003). "Deferential review is not no review, and deference need not be abject." *Id.* Further, the court's review is limited to the record that was before the decision-maker when the denial of benefits became final. *See Miller v. Metro. Life Ins. Co.*, 926 F.2d 979, 986 (6th Cir. 1991).

### III. Liberty's Decision to Deny Benefits

Ms. Masden argues that the decision to deny benefits was arbitrary and capricious because Liberty ignored Dr. Berry's opinion, and because Liberty had a conflict of interest that prevented it from treating her claim fairly.

#### A. Liberty's Evaluation of the Evidence

In deciding whether to pay benefits, the Plan administrator must consider all relevant medical evidence. That the Plan administrator chooses to rely on the medical opinion of one doctor over another does not mean that its decision is arbitrary and capricious because it is possible to offer a reasoned explanation for the decision. *McDonald*, 347 F.3d at 169 (6th Cir. 2003). Unlike in Social Security cases, the Plan administrator does not need to give great weight to the opinion of a treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834

4

(2003).

In reaching its decision, Liberty considered evidence from Ms. Walton and from Drs. Berry, Hutchens, Mirkin, Lipsitch, and Flick. Liberty found that Dr. Berry's notes were vague regarding Ms. Masden's allegedly disabling conditions, and that they did not show an exacerbation of any chronic conditions during the Elimination Period. Additionally, Liberty noted that Ms. Masden's liver function tests remained normal throughout most of the Elimination Period. Reviewing Ms. Walton's notes, Liberty noted that Ms. Walton saw Ms. Masden only twice, as Ms. Masden repeatedly failed to keep appointments. However, Ms. Walton found Ms. Masden's anxiety/depression to be "5 on a scale of 1-10" during her initial evaluation. Dr. Hutchens, having seen Ms. Masden only once, refused to offer an opinion regarding Ms. Masden's alleged disability when requested by Dr. Flick.

In contrast, Dr. Lipsitch reviewed Dr. Berry's and Ms. Walton's records, finding nothing to preclude Ms. Masden from performing her duties as a clinical assistant. Similarly, Dr. Flick found no exacerbation of Ms. Masden's conditions that would have precluded her from working. None of these doctors ignored Dr. Berry's or Ms. Walton's opinion. Rather, they noted a lack of objective findings to support a finding of disability. Weighing all of the evidence before it, Liberty found that Ms. Masden was not entitled to benefits. In light of the record, Liberty's decision was not arbitrary or capricious.

**B.    Conflict of Interest**

Because Liberty ultimately pays benefits, Ms. Masden argues that it has an incentive to improperly deny claims. Conflict of interest is a factor to consider when applying the arbitrary and capricious standard. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991). When a potential conflict of interest exists, the arbitrary and capricious standard still applies. However, the analysis is "shaped by the circumstances of the inherent conflict of interest." *Id*. Absent some evidence from Ms. Masden that Liberty acted improperly, there is no reason to alter the court's review of Liberty's decision. *Peruzzi v. Summa Med. Plan*, 137 F.3d 431, 433 (6th Cir. 1998); *Cochran v. Trans-General Life Ins. Co.*, 12 Fed. Appx. 277, 281 (6th Cir. 2001) ("[M]ere allegations of the existence of a structural conflict of interest are not enough; there must be some evidence that the alleged conflict of interest affected the Plan administrator's decision to deny benefits.").

Ms. Masden argues that Liberty did not fairly evaluate her claim noting that, in its initial denial letter, Liberty discussed only her bipolar condition. Notwithstanding the alleged failure to consider Ms. Masden's physical problems in its initial determination, Liberty conducted a thorough review of all of Ms. Masden's conditions on appeal, sending a detailed letter explaining its reasons for denying benefits. Therefore, there is insufficient evidence to show that Liberty's decision was improperly influenced by a conflict of interest. Accordingly,

**IT IS ORDERED** that the plaintiff's motion for summary judgment (DE 11) is **DENIED**.

Signed on  February 3, 2006

                                                    **Jennifer B. Coffman, Judge**
                                                    **United States District Court**